# GENERAL TERM,

## May, 1877.

| 11 | 1 |
| 63 | 322 |

| 11 | 1 |
| 159a | 259 |

| 11h | 1 |
| 38 Mis² | 448 |

## THE PEOPLE OF THE STATE OF NEW YORK EX REL. RUFUS HATCH AND OTHERS, Appellants, *v.* THE LAKE SHORE AND MICHIGAN SOUTHERN RAILROAD COMPANY AND OTHERS, Respondents.

*Chap.* 165 *of* 1842 — *Transfer agents of foreign corporations — exhibition of transfer-book and list of stockholders by — Right of corporators to inspection of books and papers of corporation.*

Chapter 165 of 1842, entitled "An act to compel transfer agents of foreign corporations to exhibit a list of the stockholders thereof," is only applicable to the transfer agents, and not to the officers of the corporations, and a *mandamus* to compel the exhibition of the transfer-books should be directed to such agents only.

This court has power to compel, by *mandamus*, the exhibition of the transfer-books of a domestic corporation containing the names of the stockholders, at any time when the exercise of such power is shown to be necessary to preserve and protect the interests of the stockholders therein.

The reasons for granting the writ should, however, be clear and cogent.

The Lake Shore and Michigan Southern Railroad Company is a domestic corporation.

APPEAL from an order of the Special Term, denying a motion for a peremptory *mandamus.*

This was an application for a *mandamus* to compel the respond-

2     PEOPLE ex rel. HATCH v. L. S. & M. S. R. R. CO.

FIRST DEPARTMENT, MAY TERM, 1877.

ents to exhibit to the relators the transfer-book and list of stock-holders of the Lake Shore and Michigan Southern Railroad Company.

The application was made on the ground that the board of directors of the Lake Shore and Michigan Southern Railroad Company were mismanaging that road, and sacrificing its interest to that of other roads in which they were largely interested, the relator alleging "that the object of deponent and his associates in demanding the list of shareholders is to communicate with them immediately, so that the shareholders may have an opportunity to co-operate and consult together as to using proper means to protect their interests and the property of the company from further depreciation."

The allegations of mismanagement were denied by respondent.

*A. J. Vanderpoel* and *Robert Sewell*, for the appellants. The several corporations consolidated into the one now here did not, by the act of consolidation, become New York corporations. They merged into a corporation which is a New York corporation, an Ohio corporation, an Indiana corporation, an Illinois corporation, and it is each at the same time, and none of the duties owed by the corporations of the several States are released by the consolidation. (*Paine* v. *Lake Erie and L. Co.*, 31 Ind., 283; *Miller* v. *Lancaster*, 5 Colden [Tenn.], 514; *Columbus R. R. Co.* v. *Powell*, 40 Ind., 37; *Prouty* v. *M. S. R. R. Co.*, 53 N. Y., 363; *Dennistoun* v. *N. H. R. R.*, 1 Hilton, 64.) But apart from the statute and independent of any rights conferred by it, a member of a corporation has, by the common law, the right to an inspection of the books of the corporation for the purpose of establishing or maintaining his rights as a member of the corporation. (*Rex* v. *Shelley*, 3 Term R., 142; *Rex* v. *Babb*, id., 580; *Harrison* v. *Williams*, 3 Barn. & Cress., 162; *Rogers* v. *Jones*, 5 D. & R., 484; Grant on Corporations, 311; *People* v. *Cornell*, 47 Barb., 329; *Hubert* v. *Ashburner*, 1 Wils., 297; Dillon on Munic. Corp., § 240.) It may be argued that these citations merely apply to public or municipal corporations. It is, however, well settled that the power of courts over the records of corporations; extend to private corporations for the protection of the members thereof, and that in this respect there is no distinction whatever, between the rights of

PEOPLE ex rel. HATCH v. L. S. & M. S. R. R. CO.        3

FIRST DEPARTMENT, MAY TERM, 1877.

corporators to an inspection of the records. (*Am. Co.* v. *Haven*, 101 Mass., 398; *State* v. *Goll*, 3 Vroom., 285; *Hatch* v. *City B.*, 1 Rob. [La.], 470; *Rex* v. *Merchant Tailors' Co.*, 2 Barn. & Ad., 115; *Cotheal* v. *Brown*, 1 Selden, 563; Angel & A. on Corp., 572; *Imp. Co.* v. *Clarke*, 7 Barry, 95; 2 Starkie's Ev., 736; *Rex* v. *Buckingham*, 8 B. & C., 375; 3 Ld. Raymond, 303; *Grey* v. *Hopkins*, 7 Mod., 129; 2 Ld. Raymond, 851; *Foster* v. *Bk. of Eng.*, 15 Law J. [N. S.], Q. B., 212; *Cockburn* v. *Union Bk.*, 13 La. Ann., 289; *Rex* v. *Hostmen of Newcastle*, 1 Strange, 1223; *Rex* v. *Trustees*, 5 Barn. & Adol., 978; *Regina* v. *Tealey*, 8 Jur., 496; *People* v. *Walker*, 9 Mich., 328; *St. Luke's Church* v. *Slack*, 7 Cush., 226; *Rex* v. *Wildman*, Strange, 879; *Anon.*, 1 Barn. K. B., 402; *Pratt* v. *Meriden Co.*, 35 Conn., 36.) The writ of *mandamus* is the appropriate remedy. It lies to compel the exercise of corporate functions in cases where the law affords no other adequate or specific remedy. (High on Ex. Remedies, § 276; *People* v. *Ins. Co.*, 19 Mich., 392; *State* v. *Bd. Trustees*, 4 Nev., 400; *Fireman* v. *Mayor*, 23 Md., 297; *Rex* v. *Windham*, Cowp., 377; *Rex* v. *Cambridge*, Burr, 1647; *King* v. *Bland*, 7 Md., 35; *Queen* v. *Kendall*, 1 Ad. & E. [N. S.], 366; *Richmond* v. *Pa. Ins. Co.*, 34 How. Pr., 195; *Hatch* v. *N. W. R. R. Co.*, Mss.; *Cotheal* v. *Brown*, 1 Selden, 562; *People* v. *Throop*, 12 Wend., 183.) It is true that the statute gives a remedy in damages, but that is neither adequate or specific. Our needs are to have the right which the law gives us, not the alternative of damages. Where an express remedy is given by statute, the writ will not lie, but the remedy, by an action for neglect of the duty, does not surpersede the remedy by *mandamus*, since such an action cannot compel the performance of the specific duty required. (High on Ex. Remedies, § 17; *Fremont* v. *Crippen*, 10 Cal., 211; *Etheridge* v. *Hall*, 7 Port., 47; *In re Trustees of Williamsburgh*, 1 Barb., 34; *King* v. *Bank of England*, Doug., 524.) It is well established that the directors of a corporation are trustees of the stockholders. (*Dodge* v. *Woolsey*, 18 How., 331; 21 Wall., 616; *Mechanics' Bk.* v. *De Bolt*, 18 How., 330; *Coleman's Admrs.* v. *Second Ave. R. R. Co.*, 38 N. Y., 202.) We then appear here as the real owners of the property which has been placed in the hands of these directors as trustees, and ask the court to establish our right to inspect the books and documents relating to the property, which

4    PEOPLE ex rel. HATCH *v.* L. S. & M. S. R. R. CO.

First Department, May Term, 1877.

is the subject of the trust. ( *Wynne* v. *Humberstone,* 27 Beav., 421 ; *Devanes* v. *Robinson,* 21 id., 42 ; *Talbot* v. *Marshfield,* 2 Dr. & Sm., 285 ; *Spungett* v. *Dashwood,* 2 Gf., 521 ; *Hardwick* v. *Vernon,* 14 Ves., 510.) The writ lies as well against a foreign corporation as a domestic one. (*Commonwealth* v. *Denison,* 24 How., 66 ; *Kendall* v. *U. S.,* 12 Pet., 527 ; *Gilman* v. *Bassett,* 33 Conn., 298 ; *Aubery* v. *Beuvens,* 6 Tex., 457 ; *Barnett* v. *Ch. R. R.,* 4 Hun, 114 ; *Prouty* v. *M. S. R. R.,* 1 id., 665.)

*Evarts, Southmayd & Choate,* for the respondent. The corporation is a domestic one. (Ang. & Ames on Corp., § 633 ; *A. & W. Sprague* v. *The Hart. Prov. and Fish. R. R. Co.,* 5 R. I., 233.) At the common law the stockholder had no absolute right to the examination of the books of the corporation, of which he was a member. The privilege of examining the books depended upon his ability to show to the court, to which application was made, that a special occasion had arisen, which rendered it proper that he should have an opportunity to make such an examination, in order to enable him to perform some duty which devolved upon him as a corporator. (Taylor on Ev., § 1346 ; *Rex* v. *Merchant Tailors' Co.,* 2 B. & A., 115 ; *Imperial Gas Co.* v. *Clarke,* 7 Bing., 95 ; *Birm., Bris. and Thames Railway Co.* v. *White,* 1 A. & E. [N. S.], 282 ; 2 Phillips on Ev., 314 ; *The King* v. *The Bank of England,* 2 B. & A., 620 ; *The People* v. *Walker,* 9 Mich., 328.)

Davis, P. J. :

The act entitled " an act to compel transfer agents of foreign corporations to exhibit a list of the stockholders thereof " (chap. 165 of the Laws of 1842 ; 3 Edmund's Gen. Stat., 677) is applicable only to the transfer agents, in this State, of foreign corporations. The duties thereby created and imposed are put specifically upon such transfer agents, and not upon the corporations, or officers of the corporations, which they represent. And it is only upon such transfer agent, or his clerk or officers, that the forfeiture provided for by the second section of the act is imposed. Proceedings, therefore, for a writ of *mandamus* to compel " the exhibition of the transfer-books of such foreign corporation, and also a list of the stockholders thereof," can properly be taken against such trans-

PEOPLE ex rel. HATCH v. L. S. & M. S. R. R. CO. 5

First Department, May Term, 1877.

fer agent only ; for his neglect or refusal to perform the duties imposed by that act is not the neglect of the corporation. So far as this proceeding is intended to be brought under the act of 1842, it should have been directed against the Farmers' Loan and Trust Company for their alleged violation of duty. The words "foreign corporation, or corporation existing beyond the jurisdiction of this State," as used in that act, are entirely synonymous, and have the same signification ; for the words "existing beyond the jurisdiction of this State," as used in the act, mean simply, having a corporate existence from authority outside of the State.

The question of parties, however, is not a very important one, because if the court should be of the opinion that the Lake Shore and Michigan Southern Railroad Company is a foreign corporation, so that their transfer agent is subject to the provisions of the act of 1842, there would be no difficulty in directing the writ of *mandamus* to such agent, and dismissing the application as to all other parties. But we think it entirely clear that it is a domestic corporation created under the laws of this State, and subject to all the duties and obligations imposed by our laws upon domestic corporations.

In respect to domestic corporations, the Revised Statutes (vol. 1, 601 [Edm. ed., p. 558, § 1]) make special provisions requiring that the book containing the names of the stockholders in any such company, shall, at all reasonable times during the usual hours of transacting business, be open to the examination of every stockholder of such company for thirty days previous to any election of directors, and imposing upon the officers having charge of such books, who shall refuse or neglect to exhibit them, or submit them to examination, a penalty to be recovered by the injured party.

The object of this statute is quite apparent. It intends to put it in the power of every stockholder, for thirty days previous to any election of directors, to ascertain the names of all stockholders of the company, so that he can exert such influence or use such lawful means as he may deem proper, to effect the election of such directors. But the statute does not, we think, cut off all rights of the stockholders of a corporation to examine its transfer-books for proper purposes, and on proper occasions, at other times.

There are no words in the statute indicating such an intention, nor

6      PEOPLE ex rel. HATCH v. L. S. & M. S. R. R. CO.

First Department, May Term, 1877.

any negation of the rights of stockholders, which requires that construction. We think, therefore, that it is within the power of the court, whenever a case is presented that requires it to be done, for the purpose of preserving the rights and interests of stockholders, to interfere by *mandamus* and compel the exhibition of the transfer-books of the corporation, or the books containing the names of its stockholders.

But we agree with the learned court below that the reasons for granting a writ in such a case " should be clear and cogent." In this case it is shown that there was to be no election within thirty days next after the time of the application. The case is not, therefore, within the provisions of the statute above referred to. It stands altogether upon the legal or equitable rights of the relators. Upon this point the court below, in its opinion, says :

"An examination of the papers read in favor of, and in opposition to, the motion, must, I think, convince any impartial mind that there is no exigency existing which calls for the granting of the writ applied for in this case. The charges of mismanagement on the part of the present board of directors, or some of them, are very fully met and denied by the respondents' affidavits ; and the reduction of the through freight and passenger rates, and the division of such rates, seem to be thoroughly justified by the facts and circumstances stated in the respondents' affidavits. While, therefore, I am not prepared to concede that the power of this court to issue a *mandamus* to compel the exhibition of the transfer-books can only be exercised during the period of thirty days prior to an election, I do not think that the case made by the relator calls for the granting of the writ."

In this conclusion of the learned judge we fully concur. The application is addressed to the sound discretion of the court. It is shown, on the part of the transfer agent, that the dealings in the stock of the company are so great, and the call for transfers of such stock so constant, as to require two clerks to be steadily engaged in using the books in the making of transfers and the issuing of certificates. The stockholders are constantly changing, and an examination on any given day, or during any given week, would fail to disclose the real stockholders with any great degree of accuracy. The examination when the transfer-books are closed preparatory to

an election would, of course, produce quite different results, for then the persons entitled to vote at the elections would be easily ascertained and determined by the books themselves. To hold that every person who shows himself to be a holder of stock is at liberty to demand an examination of the transfer-books when, and as often as he pleases, and if refused, to apply for a writ of *mandamus* to enforce an absolute right, would be to establish a rule highly prejudicial to the interests of all corporations and their stockholders. A few inimical holders of stock could thereby produce great embarrassment and injury, and substantially prevent any large dealings in the stock by others.

The power of the court should be exercised in such cases with great discrimination and care ; and while stockholders should be carefully protected from any abuse, on the part of the corporation, of its powers, or unjust denial of their rights, so, on the other hand, courts should guard against all attempts by combinations hostile to the corporation, or its existing officers, to use its writ of *mandamus* to accomplish their personal or speculative ends. In this case, we are satisfied, from all the papers before us, that there was neither occasion nor necessity for interference by the exercise of the summary and arbitrary power of the writ of *mandamus*.

Ample remedies are afforded by the ordinary processes of the court to correct all of the real or supposed wrongs alleged by the relator to exist, and those remedies ought to be pursued in the case now presented.

We think the order of the court below was right and should be affirmed, with ten dollars costs and disbursements.

Brady and Daniels, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.